# In the United States Court of Federal Claims

No. 10-695C
Filed: November 8, 2012

| | | |
|---|---|---|
| HECTOR SANTIAGO,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | The Equal Pay Act, 29 U.S.C. § 206(d): (1) <u>Statute of Limitations</u>. Defendant may assert a statute of limitations defense, despite having failed to plead such a defense in its answer to the complaint, where plaintiff suffers no prejudice as a result. Mere awareness of the Equal Pay Act is insufficient to prove that defendant's alleged violation of the Act was willful and thus that the statute of limitations period should be extended from two to three years. 29 U.S.C. § 255(a). (2) <u>Prima Facie Case</u>. Plaintiff has failed to make a prima facie case under the Equal Pay Act where plaintiff did not perform two significant tasks associated with the position of supervisor and therefore did not show that his work was substantially equal to the work of his female comparator. |

<u>Vladimir Mihailovich</u>, Carolina, Puerto Rico, counsel for plaintiff.

<u>K. Elizabeth Witwer</u>, with whom were <u>Acting Assistant Attorney General Stuart F. Delery</u>, <u>Director Jeanne E. Davidson</u>, and <u>Assistant Director Deborah A. Bynum</u>, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., counsel for defendant. <u>Michael Carlson</u>, U.S. Army Litigation Division, Fort Belvoir, Virginia, and <u>William G. Latimer</u>, U.S. Army, Fort Buchanan, Puerto, Rico, of counsel.

**OPINION**

<u>WIESE</u>, Senior Judge.

This suit arises under the Equal Pay Act, 29 U.S.C. § 206(d) (2006) ("the Act"). Plaintiff, a civilian employee of the United States Army, alleges a violation of the Act claiming that he was paid less than his female supervisor despite having

performed substantially equal work for an eleven-month period during which the supervisor was largely absent from the office and for the following two-year period during which the supervisor position was vacant. Defendant has moved for partial dismissal of plaintiff's complaint for lack of subject matter jurisdiction on the ground that several of plaintiff's claims are time barred. Additionally, defendant has moved for summary judgment with respect to the remainder of plaintiff's claims. Plaintiff filed a cross-motion for summary judgment in response. The court heard oral argument on the parties' motions on September 20, 2012. For the reasons set forth below, defendant's motion for partial dismissal and for summary judgment is granted and plaintiff's cross-motion is denied.

FACTS

This case involves the United States Army's Equal Employment Opportunity ("EEO") office at Fort Buchanan, Puerto Rico. Pursuant to the Army's manpower allotments, Fort Buchanan is authorized two employees in the EEO career field: an EEO specialist and an EEO supervisor. From August 2007 until May 2011, plaintiff was employed as the EEO specialist. At the time plaintiff was hired and for six months thereafter, Ms. Magda Figueroa was employed as the EEO supervisor.

In April 2008, Ms. Figueroa was temporarily promoted to the position of Deputy to the Garrison Commander, resulting in her physical absence from Fort Buchanan's EEO office. The promotion was not intended to be permanent, however, so Ms. Figueroa retained her official title of EEO supervisor and continued to supervise plaintiff and to oversee certain aspects of the EEO office during her temporary reassignment. Ms. Figueroa, recognizing that additional duties would be required of plaintiff in her absence, requested that plaintiff receive a temporary, five-percent pay increase to compensate him for additional work performed. The Army granted plaintiff this pay increase in May 2008.

Plaintiff worked alone in the EEO office from April 2008 until July 2008, when the Army hired a second on-site employee, Mr. Reinaldo Rodriguez, as an administrative technician. Mr. Rodriguez was not in the EEO career field. Plaintiff and Mr. Rodriguez worked together in the office until Mr. Rodriguez's departure in January 2010.

In March 2009, Ms. Figueroa's temporary reassignment as Deputy ended. Rather than having her return to the EEO office as originally planned, however, the Army permanently reassigned Ms. Figueroa to the position of Executive Officer, leaving the position of EEO supervisor vacant. When it became clear that Ms. Figueroa would not be returning to the EEO office and as a consequence, that plaintiff would continue to perform additional duties until the EEO supervisor

position was filled, the Army made plaintiff's temporary, five-percent pay increase permanent, indicating in his personnel file that the increase in pay was the "[r]esult of additional duties and responsibilities." In July 2009, plaintiff received another five-percent pay increase to compensate him for the additional duties he continued to perform.[1]

From March 2009 until February 2011, the Army attempted to fill the EEO supervisor position competitively but was unable to do so. In February 2011, the Army temporarily assigned Ms. Barbara Quillin to the position of EEO supervisor. Ms. Quillin served in that capacity until May 6, 2011. Two days later, on May 8, 2011, plaintiff left the EEO office for a new position at Fort Buchanan as a Logistics Management Specialist. The Army did not fill the position of EEO supervisor until July 2011.

Plaintiff filed suit in this court on October 14, 2010. In his complaint, plaintiff alleges that the Army acted in violation of the Equal Pay Act "in a willful manner and in bad faith." In plaintiff's view, he served as the "acting" EEO supervisor from April 2008 (when Ms. Figueroa first left the EEO office to assume the position of Deputy to the Garrison Commander) until February 2011 (when Ms. Quillin temporarily assumed the position of EEO supervisor), but did not receive the salary associated with that position. Plaintiff thus asks the court to award him the difference in salary between the EEO specialist and supervisor positions, liquidated damages, costs, and attorney's fees, and a promotion to the pay grade at which the EEO supervisor position is classified.

DISCUSSION

Section 206(d) of the Equal Pay Act prohibits consideration of gender as the basis for an employee's pay. In particular, the Act directs as follows:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are

---

[1] In addition to the five-percent pay increases he received, plaintiff also received permanent, performance-based increases to his salary in January 2009 and January 2010, as well as a one-time, lump-sum performance bonus in each of those two years.

3

performed under similar working conditions . . . .

29 U.S.C. § 206(d). The Act makes four exceptions, however, permitting a pay differential that is based on: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) . . . any other factor other than sex."

To establish a prima facie case under the Act, a plaintiff must show that the employer pays different wages to employees of the opposite sex even though the employees perform equal work on jobs requiring equal skill, effort, and responsibility under similar working conditions. Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974); Branch v. United States, 101 Fed. Cl. 411, 414 (2011). "[I]n prescribing 'equal' work," however, Congress "did not require that the jobs be identical, but only that they must be substantially equal." Shultz v. Wheaton Glass Co., 421 F.2d 259, 265 (3d Cir. 1970). In proving such a case, the plaintiff must identify a particular "comparator" for a "factor by factor" comparison and may not compare himself/herself to a hypothetical or "composite" member of the opposite sex. Strag v. Bd. of Trs., 55 F.3d 943, 948 (4th Cir. 1995); Moorehead v. United States, 88 Fed. Cl. 614, 619 (2009). Once the plaintiff has made a prima facie case, the burden shifts to the defendant to show that the pay differential is justified by one of the statute's enumerated exceptions. County of Wash. v. Gunther, 452 U.S. 161, 169 (1981); Corning Glass, 417 U.S. at 196. A claim brought under the Act must be filed within two years from the time it first accrues, or in the case of a willful violation, within three years from such accrual. 29 U.S.C. § 255(a).

In the instant case, plaintiff maintains that during the almost three-year period in which the EEO office operated without a supervisor physically present, he performed work equal to the work performed by Ms. Figueroa in her capacity as EEO supervisor but was paid less for that work in direct violation of the Act. Defendant responds that plaintiff's claims arising prior to October 14, 2008, are barred by the statute of limitations, 29 U.S.C. § 255(a), because they accrued more than two years before plaintiff filed suit in this court on October 14, 2010. Defendant additionally argues that plaintiff's remaining claims must be dismissed because they are deficient as a matter of law. We address these arguments in turn below.

I.

The applicable statute of limitations for Equal Pay Act claims is found in the Fair Labor Standards Act, 29 U.S.C. § 255(a) ("FLSA"), which establishes a two-year limitations period for violations of the Equal Pay Act. When an employer's violation of the Act is shown to be "willful," however, the statute of limitations is

extended to three years.[2] The burden of proving willfulness rests with the plaintiff. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 135 (1988) ("To obtain the benefit of the 3-year [limitations period], the [plaintiff] must prove that the employer's conduct was willful . . . ."); Adams v. United States, 350 F.3d 1216, 1229 (Fed. Cir. 2003) ("[T]he employee bears the burden of proving the willfulness of the employer's FLSA violations.").

A claim accrues under the Equal Pay Act each time an allegedly insufficient paycheck is issued. Lange v. United States, 79 Fed. Cl. 628, 631 (2007). As a consequence, a claim arising from a pay check issued more than two years before a suit is brought (or more than three years if the defendant's violation is willful) will be time-barred under 29 U.S.C. § 255(a). Id. at 629 (concluding that "each deficient paycheck gives rise to a separate violation of the [Act], and each violation must have occurred within the limitations period in order to be actionable"). Plaintiff filed his complaint in this court on October 14, 2010. Defendant therefore argues that any claim arising prior to October 14, 2008, must be dismissed as out of time.

Plaintiff offers two arguments in response. First, plaintiff maintains that the government waived its statute of limitations argument by failing to plead it as an affirmative defense in its answer to the complaint as required by this court's rules. RCFC 8.[3] Second, and in the alternative, plaintiff argues that his April 2008 to

---

[2] 29 U.S.C. § 255 provides in relevant part as follows:

> Any action . . . to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act . . .
>
> (a) . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . .

[3] RCFC 8 provides in relevant part as follows:

**(c) Affirmative Defenses.**

> **(1) In General.** In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:

(continued...)

5

October 2008 claims are timely because a three-year limitations period is applicable due to the Army's willful violation of the Act. 29 U.S.C. § 255(a).

We cannot accept either position. Plaintiff is correct that a statute of limitations defense is identified in this court's rules as one that must be pleaded affirmatively in the government's answer to plaintiff's complaint. RCFC 8(c); Hodgson v. Humphries, 454 F.2d 1279, 1284 (10th Cir. 1972) ("We think it clear that [29 U.S.C. § 255(a)] . . . must be pleaded as an affirmative defense in accordance with the requirements of [Rule 8(c)]."). And plaintiff is additionally correct that such a defense, if not raised, may be seen as waived. Strauss v. Douglas Aircraft Co., 404 F.2d 1152, 1158 (2d Cir. 1968). We cannot, however, accept plaintiff's assertion that defendant waived its statute of limitations defense on the facts of this case.

As the Court of Claims (the Federal Circuit's statutory predecessor) recognized in Cities Serv. Helex, Inc. v. United States, 543 F.2d 1306, 1313 n.14 (Ct. Cl. 1976), the failure to plead an affirmative defense does not always result in a waiver of that defense. Bull v. United States, 68 Fed. Cl. 212, 272 n.66 (2005), aff'd, 479 F.3d 1365 (2007); see also Schwind v. EW Assocs., Inc., 357 F. Supp. 2d 691, 699 (S.D.N.Y. 2005) (finding that an employer does not necessarily waive an affirmative defense in an FLSA action when the employer fails to raise it in its answer). Rather, as defendant points out, "a court may allow a non-plead affirmative defense to be raised if it would not result in prejudice to the party." City of Gettysburg, S.D. v. United States, 64 Fed. Cl. 429, 449 (2005), aff'd, 173 F. App'x 827 (Fed. Cir. 2006). We do not believe defendant's failure to plead its statute of limitations defense in its answer was in any way prejudicial to plaintiff.

The requirement that a party must plead an affirmative defense is designed to alert the opposing side about a matter in dispute. Id.; see also Bull, 68 Fed. Cl. at 272 n.66 ("In determining what defenses . . . must be pleaded affirmatively, resort often must be had to considerations of policy, fairness, and to whether the plaintiff will be taken by surprise by the assertion . . . of a defense not pleaded affirmatively by the defendant.") (internal quotations and citation omitted). Plaintiff asserted in his complaint that the Army had "willfully" violated the Equal Pay Act—a clear reference to the requirement stated in the statute for extending the limitations period from two to three years. Defendant denied that allegation in its answer. Additionally, defendant points out, the parties addressed the issue of willfulness in their joint preliminary status report, a document that was filed on March 29,

---

³(...continued)

\* \* \* \* \*

• statute of limitations . . . .

2011—forty-six days after the filing of defendant's answer and prior to the commencement of discovery. Plaintiff was thus aware by the end of March 2011, and certainly before the start of discovery, that defendant intended to challenge the timeliness of his claim, at least in part. As a consequence, plaintiff had sufficient notice of defendant's statute of limitations defense and thus had an adequate opportunity to develop facts to refute defendant's position.

Indeed, plaintiff has not alleged that he will suffer any prejudice if the court were to evaluate the issue of willfulness upon the merits, nor has he identified any information helpful to his position that he could have sought but did not. Given these circumstances, we are unable to conclude that defendant waived its right to assert a statute of limitations defense.

Nor can we accept plaintiff's contention that the Army's alleged violation of the Equal Pay Act was willful and therefore that a three-year limitations period should apply. The regulations define a violation as willful under the Act if it occurs "in circumstances where the agency knew that its conduct was prohibited by the Act or showed reckless disregard of the requirements of the Act." 5 C.F.R. § 551.104; see also Bull v. United States, 479 F.3d 1365, 1379 (Fed. Cir. 2007) (observing that "[p]roof of willfulness requires the plaintiffs to show that [the agency] either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.") (internal quotation and citation omitted). "Reckless disregard" is further defined in the regulations as the "failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104; see also Alvarez v. IBP, Inc., 339 F.3d 894, 908–09 (9th Cir. 2003) (pointing out that "[f]or § 255's extension to apply, an employer need not knowingly have violated the FLSA; rather, the three-year term can apply where an employer disregarded the very possibility that it was violating the statute . . . .") (internal quotation and citation omitted).

Plaintiff alleges in his complaint that the Army violated the EPA "in a willful manner and in bad faith." In support of this assertion, plaintiff contends that he "started complaining since the month of May 2008 and the Defendant chose to ignore him." In addition, plaintiff alleges that Ms. Figueroa promised "to do something about" plaintiff's pay and to "take care of" plaintiff, but failed to do so, an omission plaintiff characterizes as a willful violation "by definition." Finally, plaintiff contends that the Army willfully violated the Act because "the Defendant has known that [the Act] is in question during all this time, which is the question that should be asked" (citing Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139, 1142 (5th Cir. 1971)).

Plaintiff's allegations, however, do not demonstrate that the Army "either knew that its conduct was prohibited by the Act or showed reckless disregard of the

requirements of the Act." 5 C.F.R. § 551.104. As an initial matter, we do not read Ms. Figueroa's promises to "do something about" plaintiff's situation as an acknowledgment that the Army was in violation of the Act; rather, we read such assurances as a recognition of the additional duties plaintiff was expected to perform in Ms. Figueroa's absence. Notably, Ms. Figueroa indeed followed through on such a promise: she successfully sought a discretionary pay increase to compensate plaintiff for his additional duties.

Nor can we accept plaintiff's argument that a finding of willfulness is justified here because of defendant's presumed awareness of the applicability of the Act. In support of this position, plaintiff cites the test adopted in Jiffy June, 458 F.2d at 1142, defining a violation as willful when "the employer knew or suspected that his actions might violate the FLSA." This test, however, was expressly rejected by the Supreme Court in McLaughlin, 486 U.S. at 132–33, in which the Court held that "the Jiffy June standard of willfulness—a standard that merely requires that an employer knew that the FLSA 'was in the picture'—virtually obliterates any distinction between willful and nonwillful violations." The Court further held that willfulness requires more than mere awareness. Id. Accordingly, plaintiff's contention that the Army was aware of the Act is insufficient to demonstrate that the Army willfully violated the Act and that a three-year limitations period therefore should govern this action. We thus conclude that plaintiff's claims arising prior to October 14, 2008, are out of time.

II.

With respect to plaintiff's remaining claims, defendant has moved for summary judgment on essentially two grounds. First, defendant argues that plaintiff did not perform work that was substantially equal to the work performed by Ms. Figueroa because his activities did not include two important functions associated with the EEO supervisor's role: (i) the acceptance and dismissal of EEO complaints on behalf of the Army; and (ii) the performance of certain director-level responsibilities such as rating, disciplining, and recommending the promotion of subordinate-level employees. In addition, defendant points out that plaintiff was assisted in his day-to-day responsibilities by Ms. Figueroa and by the staff at the regional EEO office in Georgia during the period he alleges he was the acting EEO supervisor. Second, and in the alternative, defendant argues that even if Ms. Figueroa and plaintiff performed substantially equal work, the pay differential between them was nevertheless justified by the second exception set forth in the Act: the difference in pay was based on a merit system. Defendant thus urges the court

to dismiss plaintiff's remaining claims as deficient as a matter of law.[4]

A.

In determining whether work is substantially equal, the "controlling factor under the Equal Pay Act is job content—the actual duties that the respective employees are called upon to perform." Pearce v. Wichita Cnty., 590 F.2d 128, 133 (5th Cir. 1979) (quoting Hodgson v. Brookhaven Gen. Hosp., 436 F.2d 719, 724 (5th Cir. 1970)). "Whether two jobs entail equal skill, equal effort, or equal responsibility requires a practical judgment on the basis of all the facts and circumstances of a particular case. . . . Application of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job." EEOC v. Universal Underwriters Ins. Co., 653 F.2d 1243, 1245 (8th Cir. 1981). The relevant issue, in other words, is not the name under which the position was classified but rather the work that was actually performed. Usery v. Allegheny Cnty. Inst. Dist., 544 F.2d 148, 153 n.4 (3d Cir. 1976).

In his complaint, plaintiff identifies the various duties he contends he performed during his tenure in the EEO office. Specifically, plaintiff maintains that he managed the EEO complaints process (including writing complaint case reports); provided training to employees and supervisors; provided advice to the Garrison Commander in carrying out the installation's EEO policies; provided advice to management officials regarding the installation's affirmative action plan, reasonable accommodation program, and special emphasis program; managed the budget; provided education on prevention of sexual harassment; was involved in settlement negotiations; and was responsible for supervising immediate and collateral staff. Plaintiff additionally testified during his deposition that he was solely responsible for submitting to the Garrison Commander a report called the "MD 715 Report" (an affirmative employment report described by a senior EEO officer as "a very important report, if not *the* most important report, submitted by an EEO office"

---

[4] Defendant additionally argues that Ms. Figueroa is not, in any event, a proper comparator for the purpose of making an Equal Pay Act claim because the use of a single agency employee is the type of "isolated . . . or random" comparison that the United States Court of Appeals for the Fourth Circuit found was insufficient to support a prima facie case of discrimination, without evidence that "the entire relevant group of employees" was similarly affected by the "phenomenon of inequality." Strag, 55 F.3d at 950 (quoting Houck v. Virginia Polytechnic Institute, 10 F.3d 204, 206–07 (4th Cir. 1993)). In plaintiff's view, Ms. Figueroa is a proper comparator precisely because she held the same job at the same office as plaintiff, working under the same conditions. We agree with plaintiff: Ms. Figueroa is the best comparator there is.

(Caruthers Decl. ¶ 8, Feb. 14, 2012)) and that he was responsible for hiring and supervising Mr. Rodriguez, the office's administrative technician.

Defendant acknowledges that plaintiff performed a number of the duties of an EEO supervisor while the position remained vacant, but contends that plaintiff did not perform two key functions associated with that position: the acceptance and dismissal of EEO complaints and the supervision of subordinate employees.[5] Those responsibilities, defendant maintains, continued to belong at all relevant times either to Ms. Figueroa or to individuals in the regional EEO office in Georgia. Plaintiff, in other words, was not treated as a de facto supervisor and the duties he and Ms. Figueroa performed were not equal.

In support of its argument, defendant observes that during the six months Ms. Figueroa and plaintiff worked together in the EEO office, Ms. Figueroa was responsible for accepting and dismissing EEO complaints on behalf of the Army. Defendant further notes that when Ms. Figueroa left the office in April 2008, responsibility for accepting and dismissing complaints did not fall to plaintiff, but was instead given to the regional EEO office. The regional office continued to perform this function until Ms. Quillin was temporarily assigned to the position of EEO supervisor, at which point she assumed responsibility for accepting and dismissing complaints. At no time was plaintiff responsible for accepting and dismissing complaints on behalf of the Army.

Similarly, defendant notes that while Ms. Figueroa had responsibility for supervising subordinate employees, plaintiff did not. Although plaintiff contends that he interviewed Mr. Rodriguez, recommended his hiring, and regularly assigned him work, defendant points out that plaintiff did not have the authority to promote, reassign, or discipline Mr. Rodriguez, did not develop performance plans for Mr. Rodriguez, and was not responsible for rating Mr. Rodriguez. Indeed, defendant observes that Ms. Figueroa continued to rate both plaintiff and Mr. Rodriguez after she left the EEO office. Defendant thus argues that given the absence of any responsibility for accepting and dismissing EEO complaints and for supervising subordinate staff, plaintiff cannot make the case that the work he and Ms. Figueroa performed was substantially equal.

---

[5] The procedures for accepting and dismissing EEO complaints are governed by Army Regulation 690-600. Pursuant to this regulation, an EEO supervisor reviews a formal EEO complaint to determine if the complaint meets any of the indicated grounds for dismissal (e.g., the complaint has failed to state a claim, is untimely, or is moot). If the EEO supervisor identifies no ground for dismissing the complaint, the supervisor is required to provide the complainant with a written decision accepting the claim as well as request assignment of the case to an investigator.

B.

Even if the court were to find that plaintiff's work was substantially equal to Ms. Figueroa's despite these differences in responsibility, defendant argues in the alternative that the pay differential was nevertheless permitted under the Act because it was based on a merit system, specifically on the National Security Personnel System ("NSPS") pay scale.[6] Under the NSPS, each employee was assigned a classification code that indicated the employee's career field, position, and base pay. Plaintiff, hired as the office's EEO specialist, was assigned the designation YA-0260-02, identifying him as being in a "Nonsupervisory Professional/Analytical" occupation (YA), in the EEO career field (0260), in the second pay band (02). In her role of EEO supervisor, by contrast, Ms. Figueroa was classified as a YC-0260-02, identifying her as being in a "Supervisory/Management" occupation (YC), also in the EEO career field (0260), in the second pay band (02).[7]

Pursuant to the NSPS classification structure, an employee could be

---

[6] The Army employed the NSPS pay system from mid-2006 until October 2009, when Congress repealed the NSPS pay system and began restoring all Department of Defense employees to the General Schedule (GS) pay system.

[7] Under the NSPS pay system, an employee was assigned to one of three pay bands (01, 02, or 03), based on such factors as the type and level of work to be performed, indicating the employee's minimum and maximum base salary. For 2010, the pay range for an EEO specialist position (indicated by the designation YA) was as follows:

   Pay Band 1—Base Salary (per annum)  $26,858–$65,371
   Pay Band 2—Base Salary (per annum)  $40,695–$93,175
   Pay Band 3—Base Salary (per annum)  $79,535–$135,993

The pay range for an EEO supervisor position (indicated by the designation YC) during that same period was as follows:

   Pay Band 1—Base Salary (per annum) $33,270–$65,371
   Pay Band 2—Base Salary (per annum) $59,014–$115,610
   Pay Band 3—Base Salary (per annum) $82,926–$135,993

Notably, the minimum salary for a supervisor in the 02 pay band (Ms. Figueroa's classification) was almost $20,000 higher than the minimum salary for a nonsupervisory employee in the 02 pay band (plaintiff's classification), a pay differential that defendant explains was directly related to the additional supervisory duties required of a YC employee.

designated as a supervisor—and thus receive a supervisor's YC salary—only if the employee, at a minimum, had "responsibility for a subordinate workforce" and "perform[ed] the supervisory functions of an Immediate Supervisor." Such supervisory functions included: (a) assigning work to subordinates based on priorities, difficulty of assignments, and the capabilities of employees; (b) providing technical oversight; (c) developing performance plans and rating employees; (d) interviewing candidates for subordinate positions; (e) recommending hiring, promotion, or reassignments; (f) taking disciplinary measures, such as warnings and reprimands; (g) identifying developmental and training needs of employees; and (h) providing and/or arranging for needed development and training. Positions "exercising less than the minimum supervisory authorities of an Immediate Supervisor" were expressly excluded from the YC pay schedule and were "assigned to a pay band" in the YA pay schedule.

In light of this classification structure, defendant maintains that the Army's assignment of plaintiff to the YA pay grade was not only proper but was mandatory given that plaintiff—in contrast to Ms. Figueroa—was not responsible for performing all of the minimum supervisory authorities of an immediate supervisor. Further, defendant argues, the difference in plaintiff's and Ms. Figueroa's respective salaries was attributable solely to the differences in the YA and YC pay scales. Defendant thus contends that a pay differential based on the NSPS pay scale constitutes a valid defense under the Equal Pay Act as a differential based on a merit system rather than on gender.[8]

C.

Having carefully considered the opposing arguments, we conclude that plaintiff and Ms. Figueroa did not perform substantially equal work and as a consequence, that plaintiff has failed to make a prima facie case under the Equal Pay Act. In particular, the evidence demonstrates that key responsibilities that ordinarily would have belonged to the EEO supervisor were discharged either by Ms. Figueroa or by the regional office during the almost three-year period that plaintiff contends he was the acting supervisor. Most notably, the record shows that Ms. Figueroa, the regional office, and Ms. Quillin—but not plaintiff—were responsible during that time for accepting and dismissing EEO complaints.

---

[8] Defendant additionally notes that plaintiff, following his July 2009 pay increase, had reached his "full performance level or band" for the position of EEO specialist and consequently could not receive any further increases to his base salary. The Army, in other words, had compensated plaintiff for additional duties to the extent of its authority under the regulations.

As Mr. Rufus Caruthers, then the Regional EEO Director for the Southeast Region of the Installation Management Command in Georgia with responsibility for overseeing the Fort Buchanan EEO office, explained, he had "made the decision that the acceptance and/or dismissal of EEO complaints should be handled" by the regional office because plaintiff "lacked the necessary experience and expertise to accept and/or dismiss complaints on behalf of the Army" and that plaintiff accordingly "had no responsibility for accepting and/or dismissing EEO complaints." Caruthers Decl. ¶¶ 5–6. As Ms. Figueroa went on to explain in her declaration:

> Accepting and dismissing complaints is a critical function of the EEO office and is one of the most important jobs of an EEO officer. This duty should not be taken lightly as it determines whether an employee's claims will be reviewed and adjudicated. To properly accept and dismiss complaints, an EEO officer must receive specific training and should have a certain level of expertise and experience before performing such a duty. When I left the EEO office to join the Command Group . . . Mr. Santiago . . . had only been in the EEO career field a few months . . . and I did not feel he had the experience to perform this function. The regional director assumed the responsibilities to accept and/or dismiss Fort Buchanan's EEO complaints. Therefore, at no time did Mr. Santiago accept or dismiss complaints.

Figueroa Decl. ¶ 15, Feb. 16, 2012. Such responsibility is central to the position of EEO supervisor and the fact that plaintiff did not perform this key function directly contradicts plaintiff's assertion that he was the acting EEO supervisor in Ms. Figueroa's absence.[9]

---

[9] In addition to Ms. Figueroa's declaration, defendant submitted declarations from three other senior EEO officers attesting to the fact that the accepting and dismissing of complaints is a significant responsibility of the EEO supervisor and is an important aspect of the Army's EEO program. Mr. Caruthers for instance, described the accepting and dismissing of complaints as "a very important part of the Army's EEO program." Caruthers Decl. ¶ 6. Similarly, Ms. Quillin, Ms. Figueroa's temporary replacement as EEO supervisor, characterized the accepting and dismissing of EEO complaints as "one of the principal duties of the EEO officer" and "a very important part of the Army's EEO program." Quillin Decl. ¶ 5, Feb. 13, 2012. Finally, Ms. Rosa Garris-Turner, then the Senior EEO Specialist for the Southeast Region with oversight responsibility for Fort Buchanan, testified that the accepting and dismissing of EEO complaints is "a crucial part of the Army's EEO program" and is "not a function that would be performed by an employee with only a few months experience in the EEO career field," but rather is one that "requires
(continued...)

In addition, the record shows that plaintiff did not have responsibility for supervising a subordinate workforce.  Although plaintiff worked with, and even assigned work to, Mr. Rodriguez from July 2008 until January 2010, both men continued to report to Ms. Figueroa during that time.  As Ms. Figueroa explained in her declaration, although she "was not physically located in the EEO office on a daily basis from April 2008 until Mr. Santiago left the EEO office in May 2011, [she] continued to supervise Mr. Santiago even in [her] capacity as the Deputy to the Garrison Commander and then later as the Executive Officer" and she could attest, "[b]ased upon [her] personal knowledge . . . that Mr. Santiago did not perform all of the duties [she] performed as the EEO supervisor."  Figueroa Decl. ¶ 10.  Ms. Figueroa's declaration continued as follows:

> [W]hen I was the EEO supervisor, I performed a number of supervisory duties, including assigning work to subordinates, providing technical oversight, developing performance plans and rating subordinates, recommending the promotion and reassignments of subordinates, taking disciplinary measures, and identifying and providing training for subordinates. . . . When I was the EEO supervisor, I supervised Mr. Santiago and performed these duties. After I left in April 2008, the only employee in the EEO office was Mr. Santiago.  In July 2008 the Army recruited Mr. Rodriguez and I was Mr. Rodriguez's supervisor at all times.  Mr. Santiago did not rate Mr. Rodriguez's performance or develop performance plans against which to evaluate Mr. Rodriguez's performance.  I did. Also, Mr. Santiago never selected candidates for vacancies, he had no authority to promote or reassign subordinate employees, and he had no authority to take disciplinary measures.  I had the authority to make those decisions for the EEO office while serving as the EEO supervisor and after I left the EEO office.

Figueroa Decl. ¶¶ 11–12.  Mr. Caruthers also spoke to this point in his declaration as follows:

---

[9](...continued)
training and a high-level of experience and expertise." Garris-Turner Decl. ¶ 3, Feb. 14, 2012.  Plaintiff challenges the admissibility of these declarations, claiming that he was not given "a chance to depose those witnesses and to conduct any discovery related to their testimonies."  The record does not support this assertion.  To the contrary, defendant's "Rule 26(a)(1) Disclosures," served on plaintiff on June 10, 2011 (four months before discovery was initiated by plaintiff), listed these same individuals, together with a brief description of their respective job responsibilities, as witnesses who "may have discoverable information and may be relied upon by defendant in this matter."

> After Ms. Figueroa left the EEO office, I also knew that, due to his lack of in-depth knowledge and skills in the EEO field, Mr. Santiago would need close supervision in the day-to-day management of the EEO office and performance of the EEO program components. As a result, I became more involved in the day to day operation by calling and instructing Mr. Santiago to call my office on a regular basis before he acted on or responded to issues he was unsure of. On the whole, my office provided very close oversight, guidance, and direction to Mr. Santiago as he performed assigned responsibilities. The nature of the oversight, guidance, and direction we provided was markedly different from that provided while Ms. Figueroa was the EEO director.

Caruthers Decl. ¶ 7.[10] As with the accepting and dismissing of complaints, the supervision of subordinate employees is crucial to the position of EEO supervisor and the fact that plaintiff did not perform this function further undermines plaintiff's contention that he acted as the EEO supervisor in Ms. Figueroa's absence.[11]

In the absence of such responsibilities, we cannot conclude that Ms. Figueroa and plaintiff performed substantially equal work for the purposes of the Equal Pay

---

[10] In addition to his argument claiming lack of timely notice regarding the identification of defendant's potential witnesses (see supra note 9), plaintiff separately objects to defendant's reliance on the declaration of Mr. Caruthers, then the Regional EEO Director for the Southeast Region. Mr. Caruthers, plaintiff points out, "was the official who resolved . . . plaintiff's EEO complaint"—a circumstance that plaintiff now argues renders Mr. Caruthers' testimony an "anti-ethical intrusion in this case" and therefore inadmissible. Plaintiff offers no support for this position and the court in turn can discern no basis for declaring inadmissible the testimony of a knowledgeable witness regarding the administrative oversight that his office provided to plaintiff in the day-to-day management of Fort Buchanan's EEO office. That the witness's knowledge of this oversight role can reasonably be assumed to have also guided his decision rejecting plaintiff's EEO complaint adds nothing to plaintiff's charge.

[11] The importance of such supervisory duties to the position of EEO supervisor is beyond dispute: the differences in the job descriptions of an EEO specialist and an EEO supervisor and the corresponding differential in their salaries were tied directly to the additional responsibility and supervisory duties required of a supervisor.

15

Act.[12]  The fact that plaintiff did not perform these essential tasks justifies the wage differential.  <u>Branch</u>, 101 Fed. Cl. at 414 (observing  that "wage differentials can be justified when employees perform an important differentiating task"); <u>see also</u> <u>Krenik v. Cnty. of Le Sueur</u>, 47 F.3d 953, 961 (8th Cir. 1995) (holding that two workers' jobs were not equal when the comparison worker had additional supervisory duties); <u>Marshall v. Dallas Indep. School Dist.</u>, 605 F.2d 191, 195 (5th Cir. 1979) (quoting <u>Hodgson v. Golden Isles Convalescent Homes, Inc.</u>, 468 F.2d 1256, 1258 (5th Cir. 1972), for the proposition that "a wage differential can be justified for employees who are available to perform an important differentiating task").

We have no doubt that plaintiff was called upon to perform additional duties in Ms. Figueroa's absence—Ms. Figueroa and the Army's higher command acknowledged as much —and employee evaluations suggest that plaintiff rose to the challenge exceedingly well.  But plaintiff was compensated for those additional responsibilities through discretionary increases in his base pay.  The Equal Pay Act does not require any additional compensation.

## CONCLUSION

For the reasons set forth above, defendant's motion for partial dismissal and for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.  The Clerk is directed to enter judgment accordingly.  No costs.

s/John P. Wiese<br>
John P. Wiese<br>
Senior Judge

---

[12]  Because we conclude that Ms. Figueroa and plaintiff did not perform substantially equal work, we need not reach the question of whether the pay differential was justified as being based on a merit system.  We note, however, that if the work <u>had</u> been substantially equal, we are doubtful that the Army successfully could have relied on the NSPS pay scale as a defense.  As defendant itself notes in its brief, "[a]pplication of the equal pay act standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance." 29 C.F.R. § 1620.13(e); <u>see also</u> <u>Thomas v. United States</u>, 86 Fed. Cl. 633, 639 n.8 (2009), <u>aff'd</u>, 351 Fed. App'x 433 (Fed. Cir. 2009).  The relevant issue, then, is not the name under which the position was classified but rather the work that was actually performed.  <u>Usery</u>, 544 F.2d at 153 n.4.  Had Ms. Figueroa legitimately warranted assignment to the YC pay scale, it would have been difficult for defendant to show that plaintiff, if performing substantially equal work, would not have warranted the same.